DAN RAYFIELD
Attorney General
THOMAS H. CASTELLI  #226448
Senior Assistant Attorney General
ANURADHA SAWKAR #181564
CARTER BRACE #243828
Assistant Attorneys General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email:  thomas.castelli@doj.oregon.gov
           anu.sawkar@doj.oregon.gov
           carter.brace@doj.oregon.gov

Attorneys for Defendant Tina Kotek

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MARION COUNTY, a Political Subdivision of the State of Oregon, | Case No.  6:25-cv-01464-MC |
| Plaintiff, | STATE DEFENDANTS' MOTION TO DISMISS |
| v. | |
| TINA KOTEK, in her official capacity as Governor of Oregon; | |
| KRISTI NOEM, in her official capacity as Director of the United States Homeland Security; and | |
| TODD LYONS, in his official capacity as Acting Director of the United States Immigration and Customs Enforcement, | |
| Defendants. | |

STATE DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

LOCAL RULE 7-1 CERTIFICATION ................................................................. 1

MOTION.............................................................................................................. 1

I.        INTRODUCTION ..................................................................................... 1

II.       BACKGROUND ....................................................................................... 3

          A.       Plaintiff received five administrative subpoenas from ICE seeking
                   information related to the enforcement of civil immigration law........... 3

          B.       Background on Oregon Sanctuary Law .................................................. 5

III.      STANDARD OF REVIEW ....................................................................... 7

IV.       ARGUMENT ............................................................................................ 8

          A.       Plaintiff lacks standing to assert their claims because they have not and
                   will not suffer any injury from complying with Oregon law by declining to
                   respond to the federal administrative subpoenas. .................................... 8

                   1.       Plaintiff bears the burden of establishing an injury that is fairly
                            traceable to the challenged Oregon laws. .................................... 8

                   2.       Plaintiff will not suffer any injury by declining to respond to the
                            ICE administrative subpoenas.................................................... 9

                   3.       Plaintiff lacks standing because it has not suffered an injury-in-fact
                            and will not suffer any injury as long as it continues to follow
                            Oregon law.................................................................................... 12

          C.       Plaintiff is a municipality in the State of Oregon and, therefore, lacks
                   standing to bring a claim under the Supremacy Clause against its parent
                   state. ....................................................................................................... 18

          D.       The Court should decline to exercise supplemental jurisdiction over
                   Plaintiff's request for a declaratory judgment determining the meaning of
                   Oregon's public record laws. ................................................................. 19

V.        CONCLUSION......................................................................................... 21

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

# TABLE OF AUTHORITIES

## Cases

*Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997).................................................. 21

*Arroyo v. Rosas*, 19 F.4th 1202, 1209–10 (9th Cir. 2021).......................................................... 20

*Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Bonta*, 33 F.4th 1107, 1113 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2493 (2023) ................................................................. 19

*Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998)......................................................................................... 18

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)................................................... 20

*City & Cnty. of San Francisco v. Garland*, 42 F.4th 1078, 1085 (9th Cir. 2022) ......................... 2

*City of San Juan Capistrano v. Cal. Pub. Utilities Comm'n*, 937 F.3d 1278, 1280–81 (9th Cir. 2019)............................................................................... 2, 18, 19

*City of South Lake Tahoe v. Cal. Tahoe Reg'l Plan. Agency*, 625 F.2d 231, 233 (9th Cir. 1980))............................................................................................. 18

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) .................................................................. 13

*Clinton v. City of New York*, 524 U.S. 417  (1998)........................................................................ 14

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 943 (9th Cir. 2011)................................................................................................. 16

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000))) ........................................... 19

*Dreier v. United States*, 106 F.3d 844 (9th Cir. 1996)................................................................... 7

*E.E.O.C. v. Child.'s Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426 (9th Cir. 1983) ......................... 10

*Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024)............................. 17

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167 (2000)) ................. 7

*In re Nat'l Sec. Letter*, 33 F.4th 1058 (9th Cir. 2022).................................................................. 10

*In re Ramirez*, 905 F.2d 97 (5th Cir. 1990) .................................................................................. 9

*In re Wing*, 124 F. Supp. 492 (N.D. Cal. 1954) .......................................................................... 11

*In re Zappos.com, Inc.*, 888 F.3d 1020 (9th Cir. 2018) ............................................................... 12

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) ............................................... 7

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010)............................................................................................ 16

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Lacey v. Maricopa Cnty.*, 649 F.3d 1118, 1137 (9th Cir. 2011)...................................... 20

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1961) ............................................... 7, 8, 9, 12

*Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011) ............................................... 9

*Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 470 (2018) .......................... 19

*Murthy v. Missouri,* 603 U.S. 43 (2024) .................................................................. 9

*N.L.R.B. v. N. Bay Plumbing, Inc.*, 102 F.3d 1005 (9th Cir. 1996) ............................... 10

*Oregon v. Trump*, 406 F. Supp. 3d 940, 972 (D. Or. 2019)......................................... 2

*Palomar Pomerado Health Sys. v. Belshe*, 180 F.3d 1104, 1107 (9th Cir. 1999) ................ 18, 19

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984))........................ 18

*Pennsylvania v. New Jersey*, 426 U.S. 660 (1976) ....................................................... 13

*Powell Grove Cemetery Ass'n v. Multnomah Cnty.*, 228 Or. 597, 600, (1961)...................... 18

*Prudential Ins. Co. v. Lai,* 42 F.3d 1299 (9th Cir. 1994)............................................... 10

*Reich v. Mont. Sulphur & Chem. Co.*, 32 F.3d 440 (9th Cir. 1994) ............................... 9

*Robinson v. United States*, 586 F.3d 683 (9th Cir. 2009) ............................................. 7

*Scott v. Breeland*, 792 F.2d 925 (9th Cir. 1986)........................................................... 7

*Shasta Minerals & Chem. Co. v. SEC*, 328 F.2d 285 (10th Cir. 1964) .......................... 10

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ....................................................... 7, 9, 13

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).................................. 16

*United Building & Constr. Trades v. Mayor*, 465 U.S. 208, 215 (1984)....................... 18

*United States v. California*, 921 F.3d 865, 889 (9th Cir. 2019)..................................... 1

*United States v. Multnomah Cnty. Dep't of Comm. Just,* No. 3:25-cv-01784-MC (D. Or. 2025) ...................................................................................................................... 3

*United States v. Sec. State Bank & Trust*, 473 F.2d 638 (5th Cir. 1973).......................... 10

*United States v. Vivian*, 217 F.2d 882 (7th Cir. 1955)................................................. 11

*W. Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981)...................................... 17

*Walker v. City of Lakewood*, 272 F.3d 1114, 1124 n.3 (9th Cir. 2001))) ...................... 16

*Warth v. Seldin*, 422 U.S. 490 (1975) ...................................................................... 9

*Wolfe v. City of Portland*, 566 F. Supp. 3d 1069  (D. Or. 2021) ................................. 13

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Wright v. Serv. Emps. Int'l Union Loc. 503*, 48 F.4th 1112 (9th Cir. 2022), *cert. denied*,
   143 S. Ct. 749 (2023) .................................................................................................. 12

**Statutes**

ORS 174.109 ................................................................................................................... 5

ORS 180.805 ............................................................................................................... 4, 5

ORS 180.810 ................................................................................................................. 13

ORS 181.823 ................................................................................................................... 4

ORS 181A.820 ........................................................................................................... 4, 5

ORS 181A.823 ................................................................................................................ 5

ORS 181A.826 .......................................................................................................... 5, 11

ORS 192.310(3) .............................................................................................................. 6

ORS 192.314 ................................................................................................................... 6

ORS 192.355 ................................................................................................................... 6

**Other Authorities**

Or. Dep't of Just., *Attorney General's Model Policies Regarding Immigration* (2025) ............. 13

Or. Dep't of Just., *Attorney General's Public Records and Meetings Manual* (2024)................. 6

Tina S. Ching, *The History of Oregon's So-Called "Sanctuary" Law*, 114 Law Libr. J.
   233, 234 (2022)........................................................................................................... 5

**Rules**

Fed. R. Civ. P. 12(b)(1)............................................................................................. 1, 7, 9

**Regulations**

8 C.F.R. § 287.4 ........................................................................................................... 10

**Constitutional Provisions**

U.S. Const. art. III, §§ 1–2 .............................................................................................. 8

U.S. Const. art. VI, cl. 2 ................................................................................................ 19

**United States Code**

8 U.S.C. § 1225(d)(4) .............................................................................................. 4, 6, 9

8 U.S.C. § 1225(d)(4)(A) ................................................................................................. 9

8 U.S.C. § 1225(d)(4)(B) ......................................................................................... 5, 10

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## LOCAL RULE 7-1 CERTIFICATION

Counsel for defendant Governor Tina Kotek certifies that they conferred with counsel for Plaintiff and counsel for Federal Defendants regarding this motion via video conference on October 17, 2025. The parties were unable to resolve the disputes that are the subject of this motion, and Plaintiff opposes the motion.

## MOTION

Pursuant to Fed. R. Civ. P. 12(b)(1) , Governor Tina Kotek moves to dismiss the complaint brought by Plaintiff Marion County. This motion is supported by Plaintiff's complaint, ECF 1, the following memorandum of law, and the Declaration of Thomas H. Castelli.

## MEMORANDUM

## I.      INTRODUCTION

For nearly four decades, Oregon's sanctuary laws have prohibited state and local officials from using state resources to aid in federal immigration enforcement efforts. Under those laws— which have peacefully coexisted with seven presidential administrations—a public body must decline certain requests for information from Immigration and Customs Enforcement (ICE) unless the government obtains a judicial order, after a neutral judge has had an opportunity to first review and determine whether the subpoena meets legal requirements. That process is fully consistent with federal law and ensures that state and federal officials can carry out their public safety duties in a manner that respects both the rule of law and the dual sovereignty within our federal system. *See United States v. California*, 921 F.3d 865, 889 (9th Cir. 2019) ("Federal law provides states and localities the *option*, not the *requirement*, of assisting federal immigration authorities."). It is also similar to many other processes in which states and localities protect the public by requiring some form of compulsory process before they release sensitive information.

Under that long-standing approach, when ICE serves state or local officials with an administrative subpoena for immigration information, the next step is clear: The recipient must decline to respond unless and until a judge issues a court order enforcing that subpoena. And yet,

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

when Marion County faced those exact circumstances a few months ago, it filed this lawsuit instead, seeking an advisory opinion from this Court rather than following well-established processes under state and federal law—processes that have been in place for many years without the need for lawsuits or further clarification.

Because state law unequivocally prohibits Marion County from producing the requested information without a court order, and because the county will suffer no legal consequences from insisting that a court order issue before it complies, there is nothing further for this Court to do. Accordingly, this Court should dismiss the complaint for two reasons:

First, the county lacks standing to litigate the hypothetical "conflicts" between state and federal law that it identifies in its complaint. None of those purported conflicts are presented by the facts of this case—and, even if they were, federal courts have already made clear that federal laws do not displace Oregon's sanctuary laws. *See City & Cnty. of San Francisco v. Garland*, 42 F.4th 1078, 1085 (9th Cir. 2022) (holding that its narrow interpretation of 8 U.S.C. § 1373, the key federal law in this area, "erased any alleged conflict" between state and federal law); *Oregon v. Trump*, 406 F. Supp. 3d 940, 972 (D. Or. 2019), *aff'd in part, vacated in part, remanded sub nom., City & Cnty. of San Francisco*, 42 F.4th 1078 (9th Cir. 2022) (concluding that, to the extent a conflict exists, § 1373 is unconstitutional under a "straightforward application of anti-commandeering principles").

Second, it is well established that counties, as political subdivisions, cannot sue states in federal court for constitutional challenges to state laws. *City of San Juan Capistrano v. Cal. Pub. Utilities Comm'n*, 937 F.3d 1278, 1280–81 (9th Cir. 2019).

There is no uncertainty about the law that this Court need address in this case. Oregon law is clear: Like other public bodies and law enforcement agencies in this state, Plaintiff should decline to comply with the administrative subpoenas unless it receives a court order, consistent with state and federal law. Because Plaintiff suffers no harm by doing so, this Court lacks a justiciable case or controversy and should dismiss this case.

Page 2 -    STATE DEFENDANTS' MOTION TO DISMISS

## II.    BACKGROUND

**A.    Plaintiff received five administrative subpoenas from ICE seeking information related to the enforcement of civil immigration law.**

Plaintiff Marion County is a political subdivision of the State of Oregon. ECF 1 ¶ 26. On August 1, 2025, Plaintiff, through the Marion County Sheriff's Department, received five administrative subpoenas issued by Immigration and Customs Enforcement (ICE), a subagency of the United States Department of Homeland Security (DHS).[1] *Id.* ¶ 10. Each administrative subpoena is labelled "DHS Form I-138" and is signed by an "Acting Special Agent in Charge" for ICE. *See* Declaration of Thomas H. Castelli at Ex. 3, at 17, 22, 27. Plaintiff received the subpoenas on August 1, 2025. ECF 1 ¶ 10.

Each subpoena asks for documents with the following information: home address, phone number, driver's license number and state, name and address of employer, country of birth, place of birth, date of birth, emergency contact number, bail or bond records, and "[d]ocuments sufficient to show the underlying criminal charge … including but not limited to unredacted police reports, booking sheets, booking photos, probable cause statements, jail disciplinary records, or release agreements or release documents." ECF 1 ¶ 16. Each subpoena also states that production of "the indicated records is required in connection with an investigation or inquiry relating to the enforcement of U.S. immigration laws." Castelli Decl. at Ex. 3, at 17, 22, 27. The subpoenas each request that Plaintiff respond by August 18, 2025. *Id.* Plaintiff alleges that it has gathered records responsive to the subpoenas. ECF 1 ¶ 19. ICE has not yet obtained a judicial order directing Plaintiff to produce those records and Plaintiff has not given them to ICE—consistent with its obligations under state law. *See id.* ¶ 21.

On October 1, 2025—after this lawsuit was filed—the U.S. Attorney for the District of Oregon filed a Petition to Enforce Administrative Subpoenas. *See United States v. Multnomah Cnty. Dep't of Comm. Just,* No. 3:25-cv-01784-MC (D. Or. 2025); Castelli Decl. Ex. 2. That petition seeks a court order requiring Marion County to respond to three of the remaining four

---

[1] Since the filing of the complaint, Plaintiff notified Defendant that ICE has withdrawn one of the five administrative subpoenas. Castelli Decl. Ex. 1, at 1–2.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

subpoenas. Castelli Decl. Ex. 2, at 8–9, 20; Castelli Decl. Ex. 3, at 7–9. Notably, the petition only seeks the court order that is necessary to enforce the subpoenas under state and federal law; it does not seek any sanctions against or impose any other consequences on Marion County. Castelli Decl. Ex. 2, at 20. Nor does the complaint in this lawsuit allege that ICE or DHS ever threatened any type of contempt against Plaintiff for not responding to the administrative subpoenas. *See generally,* ECF 1.[2] This lack of any threat of contempt at this stage is consistent with the federal statute authorizing ICE to use administrative subpoenas. 8 U.S.C. § 1225(d)(4). That statute provides for a stepwise process— an administrative subpoena, a court order requiring compliance, and, only if the court order is not complied with, the potential for contempt. *See id.*

Plaintiff's complaint asserts two claims for relief. First, Plaintiff contends that Oregon laws, specifically ORS 180.805, 181A.820, and 181.823, which prohibit certain conduct related to federal civil immigration enforcement, conflict with federal laws. ECF 1 ¶ 96. Plaintiff seeks a declaratory judgment interpreting Oregon law and determining whether the Supremacy Clause preempts those laws or whether they are protected by the Tenth Amendment. *Id.* Plaintiff's second claim "[i]n the alternative to the First Claim for Relief" asks the Court to interpret Oregon's Public Records law as it relates to responding to requests for information otherwise protected by Oregon Sanctuary law. *Id.* ¶ 98. More specifically, Plaintiff asks the Court to "declare whether Oregon law requires, prohibits, or allows Marion County to provide responsive records requested by the federal subpoenas." *Id.* ¶ 103. As to both of its claims, Plaintiff offers no position as to what the answer to those questions should be.

---

[2] The complaint does allege that if Plaintiff "does not provide responsive records requested by the federal subpoenas, then Marion County faces the imminent risk of subpoena enforcement action or contempt of court by Defendant United States along with related legal costs for Marion County." ECF 1 ¶ 82. As set forth below, administrative subpoenas alone do not carry a threat of contempt. *See infra* § IV.A.2.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

**B.    Background on Oregon Sanctuary Law**

Oregon's "sanctuary" or "immigrant trust" laws date back to 1987 when the legislature passed an anti-racial profiling law which prohibited the use of state and local law enforcement resources to aid in federal civil immigration enforcement.[3] Oregon is one of many states and localities with such laws. Oregon's sanctuary laws are currently codified at ORS 180.805–.810 and ORS 181A.820–.829. Over the years, the law evolved and expanded to restrict or prohibit certain conduct by all public bodies[4] that would assist the federal government with immigration enforcement. *See* ORS 181A.820; 181A.826, 180.805. Broadly, these laws generally restrict Oregon public bodies from collecting citizenship information, providing material support or assistance to immigration enforcement activities, or responding voluntarily to information requests or demands.

As relevant to the issues in this case, under Oregon's Sanctuary Laws, Oregon Public Bodies (which include Plaintiff Marion County) are not authorized to respond to administrative subpoenas from immigration agencies. ORS 181A.823(1)(c). As discussed below, ICE administrative subpoenas, standing alone, are not enforceable unless and until ICE, with the assistance of the U.S. Attorney's Office, obtains a court order under the process set out in the federal statutes. 8 U.S.C. § 1225(d)(4)(B). Under Oregon law, once the immigration officials obtain the court order contemplated in 8 U.S.C. § 1225(d)(4)(B), and present it to the public body, the sanctuary laws authorize and contemplate that the public body will comply. ORS 181A.823(1)(c)(A); *see also* ORS 180.805(1)(b), (2)(a)–(g). Thus, in general, Oregon law contemplates that when presented with an administrative subpoena, a public body will decline, and, if ICE wishes to do so, they will go obtain a judicial order requiring compliance; once that step has been completed, Oregon public bodies will comply with the orders.

---

[3] *See* Tina S. Ching, *The History of Oregon's So-Called "Sanctuary" Law*, 114 Law Libr. J. 233, 234 (2022).

[4] Public bodies are all "state government bodies, local government bodies and special government bodies." ORS 174.109.

Page 5 -    STATE DEFENDANTS' MOTION TO DISMISS

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Oregon's public records law allows "every person" a right to inspect public records. ORS 192.314. The term "person" is defined in the law, and includes "any natural person, corporation, partnership, firm, association or member or committee of the Legislative Assembly." ORS 192.310(3). Public bodies are not included in the definition of "persons" within the meaning of the public records law, and neither is the Federal Government. *Id.*; *see also* Or. Dep't of Just., *Attorney General's Public Records and Meetings Manual* 1 (2024) (A public body "may not use the Public Records Law to obtain public records from another public body. Similarly, a public official, other than a legislator, acting within an official capacity may not rely on the Public Records Law to obtain records, although the individual could do so in an individual capacity").[5] Here, the administrative subpoenas issued by ICE are issued under federal government authority, not in anyone's individual capacity, do not state that they are public records requests, and do not invoke the Oregon public records law on their face.

Because Oregon law expressly prohibits the disclosure of, or makes confidential, certain information in relation to state involvement of the enforcement of federal immigration laws, that information is categorically exempt from disclosure under Oregon's Public Records statutes. *See* ORS 192.355(9)(a). Under ORS 192.355(9) public records are exempt if their disclosure "is prohibited or restricted or otherwise made confidential or privileged under Oregon Law."

In their complaint, Marion County seeks a judgment declaring whether 8 U.S.C. § 1225(d)(4)(A) preempts any part of Oregon's sanctuary laws. ECF 1 ¶ 96(3). Section 1225(d)(4) relates to ICE's subpoena authority, and contains two subsections, (A) and (B), which describe a stepwise process through which ICE may issue administrative subpoenas without first going to the court and satisfying procedural requirements, but that if ICE wishes to enforce the subpoena, it must go obtain a court order, and only if the court order is violated may the failure to comply with the Court order be punished with contempt. 8 U.S.C. § 1225(d)(4) provides that:

---

[5] Available online at https://www.doj.state.or.us/wp-content/uploads/2024/12/2024-PRM-Manual.pdf.

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

(A) The Attorney General and any immigration officer shall have power to require by subpoena the attendance and testimony of witnesses before immigration officers and the production of books, papers, and documents relating to the privilege of any person to enter, reenter, reside in, or pass through the United States or concerning any matter which is material and relevant to the enforcement of this chapter and the administration of the Service, and to that end may invoke the aid of any court of the United States.

(B) Any United States district court within the jurisdiction of which investigations or inquiries are being conducted by an immigration officer may, in the event of neglect or refusal to respond to a subpoena issued under this paragraph or refusal to testify before an immigration officer, issue an order requiring such persons to appear before an immigration officer, produce books, papers, and documents if demanded, and testify, and any failure to obey such order of the court may be punished by the court as a contempt thereof.

Marion County has not asked the Court for a declaratory judgment concerning the preemptive effect of any other provision of federal law apart from 8 U.S.C. § 1225(d)(4)(A).

## III.    STANDARD OF REVIEW

A defendant may move to dismiss on the grounds that the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A plaintiff bears the burden to establish subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) ("The party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists"). To establish standing to seek a declaratory judgment, a plaintiff must establish three elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1961) (citations omitted). A plaintiff must demonstrate that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan*, 504 U.S. at 560–61; *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). A court may consider evidence outside the pleadings to resolve factual disputes on a 12(b)(1) motion. *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *see also Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) (a challenge to the court's subject matter jurisdiction under Rule 12(b)(1) may rely on affidavits or any other evidence properly before the court).

## IV.    ARGUMENT

Plaintiff lacks standing to assert the two declaratory judgment claims brought in its complaint. Plaintiff has no obligation to respond to these administrative subpoenas unless ICE obtains a judicial order through an enforcement proceeding in federal court, which has not yet occurred. In that situation, state and federal laws are clear: Plaintiff must simply decline to produce the requested information unless and until a court orders otherwise in an 8 U.S.C. § 1225(d)(4)(B) proceeding. Once the Court issues such an 8 U.S.C. § 1225(d)(4)(B) order, Oregon law contemplates that Plaintiff can and must comply—which there is every reason to expect that plaintiff will do so without incident. As a result, there is no need for declaratory relief at this point because Plaintiff cannot articulate a concrete injury-in-fact that is not merely hypothetical or that would only occur by Plaintiff's willful violation of state and federal law. In addition, Plaintiff, as a municipality of the State of Oregon, lacks standing to bring constitutional Supremacy Clause claims against its parent state. Because Plaintiff lacks standing, the Court lacks subject matter jurisdiction and should dismiss Plaintiff's claims against all defendants.

**A.    Plaintiff lacks standing to assert their claims because they have not and will not suffer any injury from complying with Oregon law by declining to respond to the federal administrative subpoenas.**

Plaintiff brings claims for declaratory relief against the State, broadly asserting that provisions of Oregon law that limit the use of state public resources in federal immigration enforcement are preempted by provisions of the federal law. ECF 1 ¶¶ 72–73, 93–96. For the reasons discussed below, Plaintiff fails to establish standing to bring this lawsuit and does not establish an actual case or controversy subject to this Court's judicial power.

**1.    Plaintiff bears the burden of establishing an injury that is fairly traceable to the challenged Oregon laws.**

The judicial power granted to federal courts under Article III of the U.S. Constitution is limited to resolving actual "cases" or "controversies." U.S. Const. art. III, §§ 1–2. Standing to bring a lawsuit is a core component of Article III's case-or-controversy requirement. *Lujan*, 504 U.S. at 560. A federal court may not decide the merits of a case unless a plaintiff demonstrates

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

standing for each claim that they advance against each defendant and for each form of relief that they request. *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *Murthy v. Missouri,* 603 U.S. 43, 61 (2024) (citation modified).

At the pleading stage, a plaintiff's factual allegations must be more than conclusory legal statements that simply assert that standing exists or that the plaintiff was injured. *See Lujan*, 504 U.S. at 561 (The elements of Article III standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case" and "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation."). Where, as here, a case is at the pleading stage, the plaintiff must "clearly ... allege facts demonstrating" each element of standing. *Spokeo, Inc.*, 578 U.S. at 338. Lack of Article III standing "requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

      **2.**      **Plaintiff will not suffer any injury by declining to respond to the ICE administrative subpoenas.**

ICE, like most government agencies, can request the production of documents by issuing administrative subpoenas. 8 U.S.C. § 1225(d)(4)(A); *see Reich v. Mont. Sulphur & Chem. Co.*, 32 F.3d 440, 444 (9th Cir. 1994) (noting that administrative subpoenas are commonly used by agencies). ICE's administrative subpoenas, unlike judicial subpoenas, are not self-enforcing. *In re Ramirez*, 905 F.2d 97, 98–99 (5th Cir. 1990) ("Section 1225(a) does not authorize the INS to enforce its subpoenas in cases of noncompliance. Nor is there any provision for penalties or the like for noncompliance."); *see also* 8 U.S.C. § 1225(d)(4). Failure to comply with an administrative subpoena, standing alone, does not subject the subpoena recipient to any consequence or punishment. *In re Ramirez*, 905 F.2d at 98.

Instead, if the party declines to respond to an administrative subpoena, an ICE official can then request that the relevant United States Attorney's Office initiate an agency subpoena enforcement proceeding in federal court—a judicial process that, unlike the issuance of

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

administrative subpoenas, affords the parties an opportunity to be heard and requires a neutral judicial officer to determine that the subpoenas should be enforced. 8 U.S.C. § 1225(d)(4); 8 C.F.R. § 287.4. "[W]hile an agency may issue a subpoena without prior judicial approval, it must invoke the aid of a federal court to enforce it." *In re Nat'l Sec. Letter*, 33 F.4th 1058, 1063 (9th Cir. 2022) (citing *United States v. Sec. State Bank & Trust*, 473 F.2d 638, 641–42 (5th Cir. 1973); *Shasta Minerals & Chem. Co. v. SEC*, 328 F.2d 285, 286 (10th Cir. 1964)). During that enforcement proceeding the court considers "(1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation." *E.E.O.C. v. Child.'s Hosp. Med. Ctr. of N. Cal.*, 719 F.2d 1426, 1428 (9th Cir. 1983), *overruled on other grounds as recognized in Prudential Ins. Co. v. Lai,* 42 F.3d 1299, 1303 (9th Cir. 1994). "If the agency establishes these factors, 'the subpoena should be enforced unless the party being investigated proves the inquiry is unreasonable because it is overbroad or unduly burdensome.'" *N.L.R.B. v. N. Bay Plumbing, Inc.*, 102 F.3d 1005, 1007 (9th Cir. 1996) (quoting *Child.'s Hosp. Med. Ctr.*, 719 F.2d at 1428).[6] If the agency establishes the initial factors and the party subject to the subpoena fails to prove the inquiry is unreasonable, the court may then issue an order enforcing the subpoena.

"The 'power to punish is not generally available to federal administrative agencies,' and so enforcement must be sought 'by way of a separate judicial proceeding.'" *In re Nat'l Sec.*, 33 F.4th at 1063 (quoting *Shasta Minerals*, 328 F.2d at 286). Section 1225 reflects this by providing for contempt sanctions only after a party fails to comply with a court order. *See* 8 U.S.C. § 1225(d)(4)(B) ("any failure to obey such order of the court may be punished by the court as a contempt thereof."). Case law in the years immediately following the passage of the Immigration and Nationality Act of 1952, which enacted § 1225(d)(4), makes clear that the principle that administrative subpoenas are only enforceable after a judicial proceeding specifically applies to

---

[6] Plaintiff admits in the complaint that it does not believe that the scope of the four remaining subpoenas are "too indefinite and the information sought is and reasonably relevant to immigration and customs work," indicating that Plaintiff will not challenge the pending enforcement petition.

Page 10 -  STATE DEFENDANTS' MOTION TO DISMISS

§ 1225(d)(4). *See United States v. Vivian*, 217 F.2d 882, 884 (7th Cir. 1955)("Contempt is not in issue until and unless the defendant fails to comply with the order of the court."); *In re Wing*, 124 F. Supp. 492, 495 (N.D. Cal. 1954) (holding that a court order is "the only means now extant to insure" compliance with a § 1225 administrative subpoena).

In all, to get from a recipient's receipt of an administrative subpoena to sanctions for contempt of court, there are at least five steps:

(1) the recipient must fail to comply with the administrative subpoena,

(2) the agency must report non-compliance to the United States Attorney,

(3) the United States Attorney must initiate an agency subpoena enforcement proceeding,

(4) the court must find that the test for enforcing an administrative subpoena has been met and order it to be enforced, and

(5) the recipient of the subpoena must then refuse to comply with the court order enforcing the administrative subpoena.

Here, Plaintiff filed its complaint on August 18, 2025, the day the information was requested according to the administrative subpoenas. ECF 1 ¶ 2. At that point, Plaintiff had not even reached step one of the process described above. And now that the United States Attorney has filed an enforcement petition in federal court, Plaintiff is merely at stage three of this process. If the petition to enforce is granted by the Court, then Oregon law would not prevent Marion County from complying with that court order by providing the requested information to the federal agency. *See* ORS 181A.826; 180.805(4)(a). And there is every reason to expect that Marion County would comply. Because administrative subpoenas are not self-enforcing and no harm can come from declining to respond or comply until issuance of a judicial order, Plaintiff fails to establish any injury-in-fact from the purported, hypothetical conflict between state and federal law identified in their complaint. While the State recognizes that greater certainty is always helpful, especially in an area where rhetoric is presently heightened, Federal Courts are not available to issue advisory opinions.

Page 11 -  STATE DEFENDANTS' MOTION TO DISMISS

**3.      Plaintiff lacks standing because it has not suffered an injury-in-fact and will not suffer any injury as long as it continues to follow Oregon law.**

To meet the injury-in-fact requirement for standing, a plaintiff must show they have suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citation modified). When, as here, the injury alleged is a threat of future harm, the plaintiff must show that the injury is impending or there exists a substantial risk that the harm will occur. *See Wright v. Serv. Emps. Int'l Union Loc. 503*, 48 F.4th 1112, 1118–19 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 749 (2023)(citing *In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018)). "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending." *Lujan*, 504 U.S. at 564 n.2 (internal quotation marks omitted).

The complaint primarily advances allegations of future harm to establish standing: Specifically, Plaintiff alleges an "imminent risk" of "liability" or "lost funds" that it *could* experience as a result of potential actions by the Federal Defendants if it does not provide documents in response to the administrative subpoenas. Plaintiff also alleges an "imminent risk" of "liability" to Marion County as a result of actions by the State and various other third parties if it does provide the documents. But all of these alleged harms are purely speculative at this point and can be avoided by simply following state and federal law. Oregon law requires plaintiff, like other public bodies in this state, to refrain from complying with the administrative subpoenas unless and until federal officials obtain a judicial enforcement order. And nothing in federal law requires otherwise.

Any alleged "imminent risk" of a future contempt action against Plaintiff by the federal government is neither real nor immediate. *See* ECF 1 ¶ 82. Oregon law does not provide a legal basis for a public body to refuse compliance with a valid judicial subpoena, warrant, or order. If it were to receive a judicial order compelling a response to ICE's administrative subpoenas, state law allows Plaintiff to comply, as it would with any court order, unless and until the order has been overturned by a court. *See also Attorney General's Model Policies Regarding Immigration*

Page 12 -  STATE DEFENDANTS' MOTION TO DISMISS

("Protected information must be disclosed in the event of a judicial order that directs a public body to provide the information.").[7]

Any future harm that could accrue as a result of a contempt action would be contingent on the occurrence of several hypothetical future events, including (1) the Federal Defendants obtaining a valid judicial order, (2) Marion County refusing to comply with the same, in contravention of *both* state *and* federal law—which there is no reason to expect, (3) the Federal Defendants then initiating contempt proceedings to enforce the judicial subpoena, and (4) a federal court issuing an order of contempt. Thus, any allegation of harm is conjectural and hypothetical at this point and falls short of demonstrating a legally cognizable injury-in-fact.

More importantly, if Plaintiff were to suffer any harm from a future contempt finding, it would be the architect of its own injury. *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (for the purposes of standing, "[n]o [plaintiff] can be heard to complain about damage inflicted by its own hand."). A plaintiff cannot "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013); *see also Wolfe v. City of Portland*, 566 F. Supp. 3d 1069, 1087 (D. Or. 2021). If Plaintiff were to defy an order from this Court enforcing the administrative subpoenas, any harm suffered would not be "fairly traceable" to Oregon law. *See Spokeo, Inc.*, 578 U.S. at 338.

The complaint fails to demonstrate an injury-in-fact based on alleged contingent liability harm arising from lawsuits by ICE or USDOJ. ECF 1 ¶¶ 84–85. A contingent liability can be the basis for an injury-in-fact only when a plaintiff shows it faced a "significant immediate injury" arising from the alleged contingent liability. *Clinton v. City of New York*, 524 U.S. 417, 430–31

---

[7] ORS 180.810 requires the Oregon Attorney General to publish model policies "intended to limit, to the fullest extent possible consistent with state and federal law, immigration enforcement at public schools, public health facilities, courthouses, public shelters and other public facilities operated by a public body." Those model policies are published on the Attorney General's website, and make clear the Attorney General's position: Under Oregon's sanctuary laws, public bodies must comply with judicial orders. *See* Or. Dep't of Just., *Attorney General's Model Policies Regarding Immigration* (2025), https://www.doj.state.or.us/wp-content/uploads/2025/02/Model-Immigration-Policies.pdf (last viewed October 17, 2025).

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

(1998). The complaint makes cursory assertions of an "imminent risk" to Plaintiff of "civil liability claims" and of "its officials facing criminal charges" by the USDOJ are vague and conclusory. ECF 1 ¶¶ 84–85. For example, the complaint alleges that if Plaintiff does not comply with the administrative subpoena, the federal government will retaliate and freeze its federal funding, forcing Plaintiff to spend money on future litigation. *Id.* ¶ 83. The complaint, however, is silent on any factual allegations supporting this conclusory statement and provides no legal basis on which such hypothetical claims would be based. Plaintiff includes no allegation that the federal government has made any specific threat against Plaintiff of a lawsuit or funding freeze.

The complaint also alleges that if Plaintiff "does not provide responsive records requested by the federal subpoenas, then Marion County faces the imminent risk of subpoena enforcement action or contempt of court by Defendant United States along with related legal costs for Marion County" *Id*. ¶ 82. Here, Plaintiff is simply incorrect. As set forth above, Plaintiff, nor its employees, can face any consequence, civil or criminal, for merely declining to comply with an administrative subpoena. *See In re Ramirez*, 905 F.2d at 98–99. Nor would Plaintiff incur any costs with regard to an enforcement petition if they do not object to the enforcement—indeed, Marion County has not appeared or opposed the federal government's request for a court order, nor is it required to do so. Any such objection would be on the basis of overbreadth or undue burden and not anything related to Oregon law. *See N. Bay Plumbing, Inc.*, 102 F.3d at 1008. Nothing in the text of § 1225 suggests otherwise. The only harm Plaintiff may incur depends on its own willful violation of a court order that may, or may not, be issued. *See* 8 U.S.C. § 1225(d)(4); *In re Ramirez*, 905 F.2d at 98–99.

To the extent these vague assertions are based on 8 U.S.C. § 1373 or 8 U.S.C. § 1644 (provisions related to information exchange), the complaint fails to establish any contingent liability harm from the same. ECF 1 ¶¶ 34–35. First, neither 8 U.S.C. § 1373 nor 8 U.S.C. § 1644 are associated with criminal or civil penalties and cannot support criminal prosecution or civil liability. Plaintiff is not facing an immediate or direct contingent liability under either of these statutes, and thus contingent liability based on these statutes cannot be the basis for an injury-in-

fact in this case. Second, neither section directly requires any individual, let alone local governments or local government employees, to share information with the federal government. Instead, both statutes purport to prohibit state laws or state officials from restricting such information sharing. A county employee's compliance with a state law restricting use of state resources in federal immigration enforcement, including information sharing, would not subject Plaintiff to liability for a violation of either provision.

The complaint's assertion that Plaintiff's failure to respond to the administrative subpoenas will result an "imminent risk" of liability for violations of Oregon's Public Records Laws also lacks legal basis and is unsupported by evidence of any concrete, immediate harm. ECF 1 ¶ 84. Plaintiff alleges, without any citation to legal authority, that an administrative subpoena issued by a federal agency must be construed as a written public records request. *Id.* ¶ 59. The complaint does not allege that ICE submitted a public records request or requested that the administrative subpoenas be treated as one. Indeed, under Oregon's Public Records Law, one public body cannot make a public records request of another public body—debunking Plaintiff's theory that the administrative subpoenas at issue in this case constitute public records requests under state law. Or. Dep't of Just., *Attorney General's Public Records and Meetings Manual* 1 (2024).

Moreover, the complaint fails to set forth any factual allegations demonstrating a "significant immediate injury" that is "directly" affecting Plaintiff as a result of actions by any party for violations of Oregon's Public Records Laws, let alone an action by ICE or USDOJ to seek review of Plaintiff's hypothetical denial of a formal public records request. The only injury alleged is a risk that a lawsuit might be filed (creating legal defense costs and use of staff time), and that a hypothetical court's determination will be against Plaintiff (resulting in associated liability for costs, disbursements, and attorney's fees). ECF 1 ¶ 84. However, this hypothetical court determination would have to ignore ORS 192.355(9)(a), which exempts disclosure of information made confidential or privileged under other Oregon laws. Plaintiff's alleged

Page 15 -  STATE DEFENDANTS' MOTION TO DISMISS

contingent liability under Oregon's Public Records laws is purely speculative and fails to demonstrate an actual and imminent harm sufficient to establish an injury-in-fact.

The complaint's bare assertions that "Marion County is already spending staff time and financial resources evaluating legal requirements related to the federal subpoenas," ECF 1 ¶ 80, or that Marion County faces some unspecified "interference with operational and governance decisions," *id.* ¶ 81, also are insufficient to show an injury-in-fact for the purposes of Article III standing. Litigation costs are insufficient to establish Article III standing. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("Obviously … a plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit."); *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 943 (9th Cir. 2011) ("standing must be established independent of the lawsuit filed by the plaintiff" (quoting *Walker v. City of Lakewood*, 272 F.3d 1114, 1124 n.3 (9th Cir. 2001))); *cf. La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) (An organization "cannot manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all."). Plaintiff's bare assertions are unsupported by any facts sufficient to establish that the alleged "staff time and financial resources" Plaintiff has spent are more than investigation and legal research costs incurred solely in connection with this litigation. ECF 1 ¶¶ 80–81. Put differently, standing does not exist merely because a public body's lawyers and staff must grapple with legal questions in the course of their work. Indeed, the job of government lawyers is to undertake the day-to-day task of assisting public bodies understand their legal obligations.

To the extent alleged, these bare assertions fall well short of establishing injury-in-fact based on diversion-of-resources or other economic harms. A plaintiff "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416. Here, the alleged "staff time and financial resources" spent in "evaluating legal requirements related to the federal subpoenas," ECF 1 ¶ 80, the unspecified "interference with operational and governance decisions," *id.* ¶ 81,

Page 16 -  STATE DEFENDANTS' MOTION TO DISMISS

or even the "gather[ing] of records responsive to the federal subpoenas," *id.* ¶ 19, are not concrete or particularized harms to Plaintiff that were caused by any actions of the State. Rather, these purported harms were caused by Plaintiff's own decisions to prepare to comply with unenforceable federal administrative requests prior to receiving a court order, based only on its subjective fears of hypothetical future harm. At most, the decisions merely reflect a local government's policy preference to prioritize one government function over another, and Plaintiff cannot manufacture standing in this way. *Cf. Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024)("[A]n organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action.").

Plaintiff also advances three vague assertions of purported reputational harm. The complaint alleges that whether Plaintiff provides responsive records requested by the federal administrative subpoenas will impact how (1) "immigrants on parole," (2) "immigrants" generally, and (3) "county staff" "view" and "interact" with Marion County, which in turn will result in unspecified staffing and fiscal impacts. ECF 1 ¶¶ 90–92. These allegations are no more than conclusory allusions and do not clearly state an injury-in-fact. *W. Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981) ("[T]he facts demonstrating standing must be clearly alleged in the complaint. We cannot construe the complaint so liberally as to extend our jurisdiction beyond its constitutional limits" (citations omitted).). Plaintiff provides no factual allegation to support its bald assertions, nor does Plaintiff explain why the opinion of immigrants or employees will impact it fiscally.

In short, the complaint falls short of showing any actual, concrete harm as required for Article III standing. Because Plaintiff cannot establish an injury-in-fact, it lacks standing to assert both its claims for a declaratory judgment. The Court should, therefore, dismiss the complaint against all defendants and should decline Plaintiff's invitation to issue an advisory opinion on legal questions that are purely hypothetical at this point.

Page 17 -  STATE DEFENDANTS' MOTION TO DISMISS

**C.    Plaintiff is a municipality in the State of Oregon and, therefore, lacks standing to bring a claim under the Supremacy Clause against its parent state.**

Under federal and Oregon law, counties are subdivisions of the State of Oregon. *United Building & Constr. Trades v. Mayor*, 465 U.S. 208, 215 (1984) ("[F]undamentally, a municipality is merely a political subdivision of the State from which its authority derives."); *Powell Grove Cemetery Ass'n v. Multnomah Cnty.*, 228 Or. 597, 600 (1961) ("[C]ounties are subdivisions or agencies of state government."). The Ninth Circuit has "consistently held that political subdivisions lack standing to challenge state law on constitutional grounds in federal court." *City of San Juan Capistrano*, 937 F.3d at 1280–81. This rule applies regardless of the procedural context in which a municipality's claim arises. *Id*. at 1280. A court need only "determine (1) whether [the plaintiff] is a 'political subdivision' of the State [], and if so, (2) whether, by suing the defendants named in this action, [the plaintiff] brings this action against the state." *Palomar Pomerado Health Sys. v. Belshe*, 180 F.3d 1104, 1107 (9th Cir. 1999) (finding state-created healthcare district lacked standing to challenge state regulations on due process and supremacy clause grounds). The Ninth Circuit has not recognized any exception to this per se rule. *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (citing *City of South Lake Tahoe v. Cal. Tahoe Reg'l Plan. Agency*, 625 F.2d 231, 233 (9th Cir. 1980)). Political subdivisions have been found to lack standing to challenge state law on constitutional grounds in federal court even where they are requesting declaratory judgments. *E.g.*, *Palomar*, 180 F.3d at 1106–07.

For the purpose of standing, a suit "nominally against a state officer is in fact against the sovereign if the decree would operate against the latter." *Id.* at 1108 (internal alteration omitted) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984)). Although *Ex Parte Young*, 209 U.S. 123 (1908), provides an exception to the state's Eleventh Amendment immunity, it does not provide a political subdivision with standing to sue that sovereign in federal court by nominally suing a state officer. *Palomar*, 180 F.3d at 1108.

Here, Marion County, like all counties in Oregon, is a political subdivision of the State of Oregon. *Powell Grove Cemetery Ass'n.*, 228 Or. at 600. The County describes itself as a political

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

subdivision in the caption and body of its complaint. ECF 1 Caption, ¶ 26. Marion County sues

Governor Kotek in her official capacity. This suit, although nominally against Governor Kotek,

is in fact against the State of Oregon. *Palomar*, 180 F.3d at 1108. That is, any declaratory

judgment issued by this Court would operate on the State of Oregon by determining the scope of

its sanctuary and public record laws and, by extension, the nature of the interactions between the

State, including its subdivisions, and the federal government concerning civil immigration

enforcement. To the extent the instant matter brought by Marion County in federal court is a suit

making constitutional claims about federal law, the County lacks standing to bring it. *City of San

Juan Capistrano*, 937 F.3d at 1280–81.

Marion County sues for a declaratory judgment concerning, in part, preemption,

commandeering and the Supremacy Clause. ECF 1 ¶ 96. All three of those legal doctrines are

constitutional in nature. *Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Bonta*, 33 F.4th

1107, 1113 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2493 (2023) ("Preemption is rooted in the

'fundamental principle of the Constitution …. that Congress has the power to preempt state

law.'" (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000))); *Murphy v.

Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 470 (2018) ("The anticommandeering doctrine

may sound arcane, but it is simply the expression of a fundamental structural decision

incorporated into the Constitution."); U.S. Const. art. VI, cl. 2 (providing that federal law is the

"supreme Law of the Land"). Therefore, Plaintiff lacks standing to seek a declaratory judgment

regarding preemption, commandeering, and the Supremacy Clause. As a result, the Court should

dismiss Plaintiff's constitutional claims in its first claim for relief for lack of subject matter

jurisdiction.

**D.     The Court should decline to exercise supplemental jurisdiction over Plaintiff's request for a declaratory judgment determining the meaning of Oregon's public record laws.**

As explained above, Plaintiff's public records-related claim does not comport with basic

tenants of Oregon's Public Records Law, which does not allow a public body to make a public

records request to another public body, and which exempts records whose disclosure is otherwise

Page 19 -  STATE DEFENDANTS' MOTION TO DISMISS

prohibited by law. *See* supra, page p. 15. Nor does it comport with the reality of what the Federal defendants have done here – which is to issue an administrative subpoena under 8 U.S.C. § 1225, not invoke the Oregon Public Records Law. But even if that were not so—and even Plaintiff somehow had standing to raise such a claim—this Court should nonetheless decline to exercise supplemental jurisdiction over what is a pure issue of state statutory interpretation.

> [A] district court that has original jurisdiction over a civil action "shall have supplemental jurisdiction," subject to certain exceptions, "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

*Arroyo v. Rosas*, 19 F.4th 1202, 1209–10 (9th Cir. 2021) (quoting 28 U.S.C. § 1367(a)). Under 28 U.S.C. § 1367(c), a court may decline to exercise supplemental jurisdiction once it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *see also Lacey v. Maricopa Cnty.*, 649 F.3d 1118, 1137 (9th Cir. 2011). A district court should consider several factors when determining whether to "decline to exercise supplemental jurisdiction over a claim," including:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

While the court has discretion over whether to dismiss, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors …. will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). "While discretion to decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in§ 1367(c), it is informed by the …. values of economy, convenience, fairness, and comity." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (citation modified).

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

Here, the Court should decline to exercise supplemental jurisdiction over Plaintiff's request that it interpret Oregon public records law. ECF 1 ¶¶ 96(2), 97–103. If the Court dismissed Plaintiff's claims related to the Supremacy Clause, only state law claims would survive. Plaintiff's complaint also implicates an issue of state law regarding whether a federal agency is a "person" for the purposed of the public records law and to what extent is a state public body require to treat an administrative subpoena as a public record request—an issue that should be litigated in state courts. Because state law claims would predominate, the Court should decline to exercise supplement jurisdiction and dismiss Plaintiff's second claim for relief.

## V.    CONCLUSION

For the reasons stated above, defendant Governor Tina Kotek asks that the Court grant this motion to dismiss with prejudice.

DATED October 20 , 2025.

Respectfully submitted,

DAN RAYFIELD
Attorney General

_____s/ Thomas H. Castelli_____
THOMAS H. CASTELLI #226448
Senior Assistant Attorney General
ANURADHA SAWKAR #181564
CARTER BRACE #243828
Assistant Attorneys General
Trial Attorneys
Tel (971) 673-1880
Fax (971) 673-5000
thomas.castelli@doj.oregon.gov
anu.sawkar@doj.oregon.gov
carter.brace@doj.oregon.gov
Of Attorneys for Defendant Tina Kotek