**SCOTT E. BRADFORD, OSB #062824**
United States Attorney
District of Oregon
**SUSANNE LUSE, OSB #142489**
Assistant United States Attorney
Susanne.Luse@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2936
Telephone: (503) 727-1019
Attorneys for the United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. 3:25-cv- |
| Petitioner, | |
| v. | **PETITION TO ENFORCE ADMINISTRATIVE SUBPOENAS** |
| **MULTNOMAH COUNTY DEPARTMENT OF COMMUNITY JUSTICE; DENISE PEÑA, Director, Multnomah County Department of Community Justice; CLACKAMAS COUNTY SHERIFF ANGELA BRANDENBURG; CLACKAMAS COUNTY SHERIFF'S OFFICE PAROLE & PROBATION DIVISION; SHERIFF NICHOLAS HUNTER, Marion County Sheriff's Office Community Corrections Division; MARION COUNTY SHERIFF'S OFFICE, COMMUNITY CORRECTIONS DIVISION; NATHAN GAOIRAN, Director, Washington County Community Corrections Probation and Parole; WASHINGTON COUNTY COMMUNITY CORRECTIONS PROBATION AND PAROLE;** | |
| Respondents. | |

**Page 1        Petition to Enforce Administrative Subpoenas**

The United States of America respectfully petitions this Court for an order directing enforcement of Homeland Security Investigations ("HSI") subpoenas issued and served upon MULTNOMAH COUNTY DEPARTMENT OF COMMUNITY JUSTICE; DENISE PEÑA, Director, Multnomah County Department of Community Justice (hereinafter "Multnomah County"); CLACKAMAS COUNTY SHERIFF ANGELA BRANDENBURG; CLACKAMAS COUNTY SHERIFF'S OFFICE PAROLE & PROBATION DIVISION (hereinafter "Clackamas County"); SHERIFF NICHOLAS HUNTER, Marion County Sheriff's Office Community Corrections Division; MARION COUNTY SHERIFF'S OFFICE, COMMUNITY CORRECTIONS DIVISION (hereinafter "Marion County"); NATHAN GAOIRAN, Director, Washington County Community Corrections Probation and Parole Division; WASHINGTON COUNTY COMMUNITY CORRECTIONS PROBATION AND PAROLE DIVISION (hereinafter "Washington County") (collectively hereinafter "Respondents").

## I. INTRODUCTION

1. Since passage of Oregon House Bill 3265 in September 2021, Oregon prisons have consistently refused to cooperate with federal detainers requesting officials turn over to U.S. Immigration and Customs Enforcement ("ICE") all criminal aliens upon completion of their state sentences in this judicial district. *See* Declaration of Camilla Wamsley ("Wamsley Decl.") ¶ 5, Ex. A. In addition, rather than allowing federal officials to investigate prisoners to ascertain whether they are citizens of the United States and potentially subject to removal and detention, Oregon has ignored all federal requests for information or access to prisoners for interviews since passage of Oregon House Bill 3265. *Id.* ¶ 4.

**Page 2**        **Petition to Enforce Administrative Subpoenas**

Castelli Decl., Exhibit 2, Page 2 of 20
Case No: 6:24-cv-01464-MC

2.      In order to obtain information relevant to its investigative work, on or about July 30, 2025, HSI issued and served 10 subpoenas upon Respondents pursuant to 8 U.S.C. § 1225(d)(4) and 8 C.F.R. § 287.4(c). Exhibit B, Declaration of Todd Rignel ("Rignel Decl.") ¶ 14.

3.      The information sought by the subject subpoenas involves individuals who have raped Oregon citizens, sexually abused Oregon children, and committed other aggravated felonies such as manslaughter, burglary, assault, sexual assault, and drug trafficking, and are subject to removal from the United States ("criminal aliens"). Rignel Decl. ¶¶ 6-9. The subpoenas seek information that would allow Petitioner to locate these dangerous, criminal aliens who are subject to removal from the United States pursuant to the Immigration and Nationality Act ("INA"). *See* Rignel Decl. ¶ 17.

4.      All Respondents refused to comply with the subpoenas. *See* Rignel Decl. ¶¶ 26-27. Respondent Clackamas County, through counsel, stated the County and Sheriff Angela Brandenburg are required to decline the requests and can only respond upon receipt of a judicially issued subpoena. *See* Rignel Decl. Ex. 3. Respondent Washington County, through counsel, declined the requests, stating that it can only produce responsive information on receipt of a judicially issued subpoena. *Id.* Respondent Multnomah County, through counsel, stated the Department of Community Justice was declining the request as required under Or. Rev. Stat. § 181A.826. *Id.* Respondent Marion County has not complied with the subpoenas, but instead, through counsel, filed a Complaint for Declaratory Relief with this Court. *See* Complaint for Declaratory Relief, *Marion County v. Kotek, et al.*, 6:25-cv-01464-MC (D. Or. August 18, 2025). The Complaint for Declaratory Relief notes that Oregon's "sanctuary laws" have internal inconsistencies and appear to conflict with federal law, as well as Oregon's Public Records laws,

**Page 3          Petition to Enforce Administrative Subpoenas**

and seeks clarification from the Court on what Marion County is required, allowed, or prohibited from doing in response to HSI's subpoenas. *Id.*

5.      This Court should enforce the subpoenas, as issued, under 8 U.S.C. § 1225(d)(4)(B) because they meet the applicable standards for administrative subpoenas: (1) they are issued within the federal agency's statutory authority; (2) they seek information reasonably relevant to the inquiry by HSI; (3) they are not too indefinite; and (4) they are not unduly burdensome.

## II.      JURISDICTION AND VENUE

6.      This Court has jurisdiction over this Petition under 28 U.S.C. §§ 1331, 1345, and 8 U.S.C. § 1225(d)(4)(B), which provides for a subpoena enforcement action to be filed in "[a]ny United States district court within the jurisdiction of which investigations or inquiries are being conducted by an immigration officer . . . ." The investigations of the 10 criminal aliens at issue are being conducted within this judicial district.

7.      Venue is proper in this district under 8 U.S.C. § 1225(d)(4)(B) because HSI is conducting its investigations within this district, and under 28 U.S.C. § 1391(b)(1) because Respondents are located within this district.

## III.      BACKGROUND

8.      The Federal Government has "broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012).

9.      Congress has enacted laws governing the entry, presence, status, and removal of aliens within the United States. These laws codify the Executive Branch's authority to inspect, investigate, arrest, detain, and remove aliens in accordance with those provisions. *See*, *e.g.*, 8 U.S.C. §§ 1182, 1225-28, 1231, and 1357.

Castelli Decl., Exhibit 2, Page 4 of 20
Case No: 6:24-cv-01464-MC

10.     ICE is responsible for the investigation, arrest, detention, and removal of aliens within the United States. 6 U.S.C. § 251 (transferring to the Secretary of Homeland Security functions relating to the inspection, investigation, detention and removal of criminal aliens); *Clark v. Suarez Martinez*, 543 U.S. 371, 374 n.1 (2005) (noting that the powers of investigation and detention of aliens formerly provided to the Attorney General were transferred to the Department of Homeland Security and its components). As the investigative arm of ICE, HSI collaborates with ICE Enforcement and Removal Operations ("ERO") in investigating, identifying, and locating criminal aliens who are amenable to removal and/or criminal prosecution, as both HSI special agents and ERO deportation officers are "immigration officers" as defined in 8 U.S.C. §1101(a)(18). *Id.* at 3. In executing these duties, HSI and ERO routinely request information from local, state and federal law enforcement agencies to make removability determinations, to prepare for targeted arrests and to determine the location of criminal aliens. *Id.* at 4. To further aid their investigations, HSI and ERO utilize a variety of law enforcement systems and publicly available databases to obtain the most up-to-date criminal history, addresses and associations of a criminal alien. *Id.* at ¶ 5.

**A.  Information Regarding the Subjects of the At-Issue Subpoenas**

11.     The criminal aliens who are the subject of the subpoenas are all at large. Specific information about each individual is as follows:

**<u>Clackamas County</u>**:

12.     **Criminal Alien 1**: This criminal alien has two serious prior convictions in Oregon. First, he was convicted in 2004 of Assault in the Second Degree, Assault in the Third Degree, and Criminal Mistreatment in the First Degree and sentenced to over 60 months in prison. In 2008, he was convicted of Manslaughter in the First Degree and sentenced to over 150 months in prison

**Page 5**          **Petition to Enforce Administrative Subpoenas**

and post-prison supervision. ICE issued detainers to Oregon Department of Corrections ("ODOC") and Clackamas County Jail/Sheriff's Office. The detainers were not honored, and Oregon officials released him into the community in 2023. He is a native and citizen of Mexico, illegally present in the United States, and is subject to removal. Rignel Decl. ¶ 6(a).

13.     **Criminal Alien 2**: This criminal alien was convicted in Oregon of three counts of Rape in the Third Degree and three counts of Sodomy involving a minor child under age 16 in 2013. He was sentenced to over 90 months in prison, post-prison supervision, and was required to register as a sex offender. ICE issued a detainer to ODOC; however, the detainer was not honored, and Oregon officials released him into the community in 2022. He is a native and citizen of Mexico and a lawful permanent resident, but his convictions render him deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony. *Id.* ¶ 6(b).

### Washington County:

14.     **Criminal Alien 3**: This criminal alien was convicted in Oregon of Kidnapping in the First Degree, Burglary in the First Degree, Robbery in the Second Degree, and Assault in the Fourth Degree in 2011. He was sentenced over 150 months in prison and post-prison supervision. The court imposed an upward departure in its sentence based on the aggravating fact that the criminal alien had reason to know of a particular vulnerability of his victim based on the victim's age, disability, or ill health, which increased the harm or threat of harm caused by the criminal conduct. ICE issued detainers to both Clackamas County Jail/Sheriff's Office and ODOC. However, the detainers were not honored, and Oregon officials released him back into the community in 2025. His post-prison supervision is currently being handled by Washington County. He is a native and citizen of Honduras and a lawful permanent resident of the United

**Page 6          Petition to Enforce Administrative Subpoenas**

States, but his convictions render him deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony. *Id.* ¶ 7(a).

**Multnomah County**:

15.    **Criminal Alien 4**: This criminal alien was convicted in Oregon of Assault in the Second Degree, Criminal Mischief in the Second Degree, Attempt to Commit a Class B Felony and Unlawful Use of a Weapon in 2018. He was sentenced to over 60 months in prison and post-prison supervision.  ICE issued a detainer to ODOC. However, the detainer was not honored, and Oregon officials released him back into the community in 2023. He is a native and citizen of Mexico, illegally present in the United States, and is subject to removal.  *Id.* ¶ 8(a).

16.    **Criminal Alien 5:** This criminal alien was convicted in Oregon of two counts of Sexual Abuse in the First Degree involving two separate victims who were under the age of 14. He was sentenced to over 60 months in prison, post-prison supervision, and was required to register as a sex offender. ICE issued a detainer to ODOC. However, the detainer was not honored, and Oregon officials released him into the community in 2022. He is a native and citizen of Mexico and a lawful permanent resident of the United States, but his convictions render him deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony. *Id.* ¶ 8(b).

17.    **Criminal Alien 6**: This criminal alien was convicted in Oregon of Rape in the First Degree – Constituting Domestic Violence in 2015. In his plea petition, he admitted an aggravating fact alleged in the indictment: that during this offense, he used or threatened to use a weapon. He was sentenced to over 90 months in prison, post-prison supervision, and was required to register as a sex offender. ICE issued a detainer to ODOC. However, the detainer was not honored, and Oregon officials released him into the community in 2023. He has since violated his parole. He is

**Page 7**        **Petition to Enforce Administrative Subpoenas**

a native and citizen of Mexico, illegally present in the United States, and is subject to removal. *Id.*
¶ 8(c).

18.     **Criminal Alien 7**: This criminal alien was convicted in Oregon of Rape in the First

Degree in 2015. He was sentenced to over 120 months in prison with a lengthy term of post-prison

supervision and was required to register as a sex offender. ICE issued four detainer requests to

Multnomah County Jail/Sheriff's Office. However, the detainers were not honored, and Oregon

officials released him into the community in 2023. He is a native and citizen of Mexico, illegally

present in the United States, and is subject to removal. *Id.* ¶ 8(d).

<u>**Marion County**</u>:

19.     **Criminal Alien 8**: This criminal alien was convicted in Oregon of three counts of

Rape in the First Degree and two counts of Sexual Abuse in the First Degree. He was sentenced to

over 150 months in prison, post-prison supervision, and was required to register as a sex offender.

ICE issued a detainer to Marion County. However, the detainer was not honored, and Oregon

officials released him into the community in 2022. He is a native and citizen of Mexico, illegally

present in the United States, and is subject to removal. *Id.* ¶ 9(a).

20.     **Criminal Alien 9**: This criminal alien has two serious prior convictions in Oregon

involving sexual violence. First, he was convicted in 2008 of Rape in the First Degree and Sexual

Abuse in the First Degree for which he was sentenced to over 90 months in prison. Second, shortly

after completing that sentence, he was convicted of Sexual Abuse in the First Degree in 2016 and

sentenced to over 70 months in prison and post-prison supervision. ICE issued a detainer to both

Marion County Jail/Fiscal Services Department and ODOC. However, the detainers were not

honored, and Oregon officials released him into the community in 2022. He is a native and citizen

of Mexico, illegally present in the United States, and is subject to removal. *Id.* ¶ 9(b).

**Page 8        Petition to Enforce Administrative Subpoenas**

21.    **Criminal Alien 10**: This criminal alien was convicted in federal court of possessing and using a fake Border Crossing Card to enter the United States in October 2012. In early January 2013, upon release from federal prison, he was transferred to Oregon for an outstanding warrant in Marion County, where he was subsequently convicted of Robbery and Kidnapping in the First Degree. He was sentenced to over 100 months in prison and post-prison supervision. ICE issued a detainer to ODOC. However, the detainer was not honored, and Oregon officials released him into the community in 2023. He is a native and citizen of Mexico, illegally present in the United States, and is subject to removal. *Id.* ¶ 9(c).

**B.  HSI's Investigative Efforts to Locate the Criminal Aliens**

22.    Between March and July 2025, HSI agents and ERO officers were assigned to attempt to locate the above-listed criminal aliens. During their attempts to locate these criminal aliens, HSI agents and ERO officers conducted surveillance at any last known and/or potential addresses found for each of the criminal aliens under investigation. Neither HSI agents nor ERO officers were able to locate these criminal aliens using their last known and/or potential addresses. Rignel Decl. ¶ 13.

23.    Between May 30, 2025 and June 5, 2025, HSI reviewed approximately 11 law enforcement databases and public databases to research the whereabouts of the criminal aliens. The checks were done by running their names, aliases, possible addresses, phone numbers, alien numbers, and FBI numbers if found. Results were then compiled and put into a target profile for each criminal alien. *Id.* ¶ 12.

24.    Further criminal history checks were run again on or about September 8, 2025, to look for any possible recent arrests of the criminal aliens. *Id.*

Page 9        Petition to Enforce Administrative Subpoenas

25.     Based on the information presently available concerning these criminal aliens, HSI has determined that each of them is likely subject to removal because they either (1) are present in the United States without being admitted or paroled, 8 U.S.C. § 1182(a)(6)(A)(i); (2) arrived in the United States at any time or place other than as designated by the Attorney General, *id.*; (3) by fraud or willfully misrepresenting a material fact, sought to procure admission into the United States, 8 U.S.C. § 1182(a)(6)(C)(i); (4) were convicted of an aggravated felony at any time after admission, 8 U.S.C. § 1227(a)(2)(A)(iii); (5) were convicted of a crime of child abuse, child neglect, or child abandonment, 8 U.S.C. § 1227(a)(2)(E)(i); or (6) were convicted of, admitted having committed, or admitted having committed acts which constitute the essential elements of a crime involving moral turpitude (other than a purely political offense) or attempted or conspired to commit such a crime, 8 U.S.C. § 1182(a)(2)(A)(i). *Id.* ¶ 10.

26.     Based on the information presently available concerning these criminal aliens, HSI has determined that each of them are likely subject to detention by ICE pending their removal. *See* 8 U.S.C. § 1225(b)(2)(A) ("[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title"); 8 U.S.C. § 1225(a)(1) (defining an "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)"); *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025) (holding that the INA "explicitly requires" that applicants for admission be "mandatorily detained for the duration of their immigration proceedings"); 8 U.S.C. § 1226(c) (providing that the Attorney General "shall take into custody" aliens who have

**Page 10     Petition to Enforce Administrative Subpoenas**

committed certain offenses, including aggravated felonies and crimes involving moral turpitude); 8 U.S.C. § 1241(a)(2)(A) (providing that the Attorney General "shall detain" aliens ordered removed). *Id.* ¶ 11.

### C. HSI's Subpoenas to Respondents

27.      In 8 U.S.C. § 1225(d)(4)(A), Congress has authorized immigration officers to "require by subpoena . . . the production of books, papers, and documents relating to the privilege of any person to enter, reenter, reside in, or pass through the United States or concerning any matter which is material and relevant to the enforcement of this chapter and the administration of the Service." The term "this chapter" in the statute broadly refers to Title 8, United States Code, Chapter 12 ("Immigration and Nationality"), which encompasses 8 U.S.C. §§ 1101–537, and the "Service" now refers to the U.S. Department of Homeland Security.

28.      On July 30, 2025, HSI issued administrative subpoenas directed to Respondent Clackamas County concerning Criminal Aliens 1 and 2. Rignel Decl. ¶ 14. The subpoenas were served upon Respondent Clackamas County on July 31, 2025. *Id.*

29.      On July 30, 2025, HSI issued an administrative subpoena directed to Respondent Washington County concerning Criminal Alien 3. *Id.* The subpoena was served upon Respondent Washington County on July 31, 2025. *Id.*

30.      On July 30, 2025, HSI issued administrative subpoenas directed to Respondent Multnomah County concerning Criminal Aliens 4, 5, 6 and 7. *Id.* The subpoenas were served upon Respondent Multnomah County on August 4, 2025. *Id.*

31.      On July 30, 2025, HSI issued administrative subpoenas directed to Respondent Marion County concerning criminal aliens 8, 9, and 10. *Id.* The subpoenas were served upon Respondent Marion County on August 1, 2025. *Id.*

Castelli Decl., Exhibit 2, Page 11 of 20
Case No: 6:24-cv-01464-MC

32.     Each subpoena sought the following two sets of documents.

    a.  Documents sufficient to establish the following for each criminal alien: home address(es) during the period of supervision; phone number(s) during the period of supervision; Driver's License number and state; name of employer(s) during the period of supervision; employment address(es) during the period of supervision; county of birth, place of birth, date of birth; emergency contact number; and bail or bond records to include the obligor name and address; *Id.* ¶¶16-18; and

    b.  Documents relating to the underlying criminal charge(s) related to the criminal alien's supervision, including but not limited to unredacted police reports, booking sheets, booking photos, probable cause statements, jail disciplinary records, and release agreements or release documents. *Id.*

33.     The subpoenaed information will assist HSI and ERO in several ways. The basic identification information sought in the subpoenas (such as name, date of birth, nationality, and FBI number) will allow HSI and ERO to verify that the criminal aliens formerly held in Respondents' custody are in fact the same individuals that HSI is investigating. This corroboration can be obtained only by review of Respondents' documents. *Id.* ¶ 19.

34.     The information concerning each criminal alien's addresses, as well as the contact information for each criminal alien's bond obligor and emergency contacts, will assist HSI and ERO in locating the criminal aliens and in assessing how best to safely take them into custody. HSI and ERO attempted to locate the criminal aliens at the addresses found within databases without success, so any further addresses or contact information the counties have will assist HSI and ERO in locating the criminal aliens without potentially expending further resources unnecessarily. Because the criminal aliens are subject to post-prison supervision by the

**Page 12       Petition to Enforce Administrative Subpoenas**

Respondents, Respondents are likely to have more up-to-date contact and biographical information for the criminal aliens. HSI has been unable to obtain this information from any other source. *Id.* ¶ 20.

35.     Obtaining multiple addresses (such as both home and work addresses) also aids law enforcement in ensuring that the apprehending officers have at least one correct address at which to locate the criminal aliens. If law enforcement obtains multiple addresses, they can choose an approach in apprehending the criminal aliens that minimizes the risk of harm to themselves, the criminal alien, and the public. *Id.*

36.     Respondents' documents showing the criminal charge(s) may include probable cause statements, arrest reports, and/or additional documents that may contain factual information that provides significantly more detail concerning the criminal conduct alleged against the criminal alien. *Id.* ¶ 22.

37.     Documents showing the criminal charge(s) also may include information that sheds light on where the criminal aliens may be found. These documents may include information about any bond obligor, who may have knowledge of the criminal aliens' most recent whereabouts. The documents also may reflect information gathered by law enforcement about where to locate the criminal aliens. *Id.* ¶ 23.

38.     Documents containing the state criminal charge(s) also have inherent evidentiary value in proving an alien's criminal history in either administrative or federal court proceedings. HSI has no other source for this evidentiary information than Respondents. *Id.* ¶ 24.

39.     Documents containing information relating to the criminal charge(s) assist HSI and ERO in various other ways: in assessing if the criminal alien is removable; in evaluating whether the criminal alien may and should be referred for criminal prosecution; and in assessing each

**Page 13        Petition to Enforce Administrative Subpoenas**

criminal alien's potential level of dangerousness to ICE arresting officers and to the public. This information can also aid HSI in assessing the appropriateness of detention of a criminal alien post-apprehension. *Id.* ¶ 25.

40.     Unless Respondents provide the criminal charging documents, HSI has no other readily available source from which to access these documents and obtain the above-referenced information. *Id.* ¶ 18.

**D.  Respondents Have Not Complied with the Subpoenas**

41.     The at-issue subpoenas required Respondents to produce the requested documents by the following dates: Multnomah County by August 19, 2025; Washington County by August 15, 2025; Clackamas County by August 15, 2025; and Marion County by August 18, 2025. *See* Rignel Decl. Ex. 1.

42.     Respondents Washington County and Clackamas County specifically declined to respond to the subpoenas and stated that they would only respond upon receipt of a judicially issued subpoena. *See* Rignel Decl. Ex. 3. Respondent Multnomah County simply declined to comply with the subpoenas because, in its view, declination was required under Or. Rev. Stat. § 181A.826. *Id.*  Respondent Marion County is seeking guidance from this Court as to its obligations pursuant to the subpoenas through proceedings in *Marion County v. Tina Kotek, supra.* Rignel Decl. ¶ 27.

43.     When a recipient of an HSI subpoena does not comply, as here, the Attorney General or immigration officer "may invoke the aid of any court of the United States" to enforce the subpoena. 8 U.S.C. § 1225(d)(4)(A).  "Any United States district court within the jurisdiction of which investigations or inquiries are being conducted by an immigration officer may, in the event of neglect or refusal to respond to a subpoena issued under this paragraph . . . issue an order

**Page 14**          **Petition to Enforce Administrative Subpoenas**

requiring such persons to appear . . . produce books, papers, and documents if demanded." 8

U.S.C. § 1225(d)(4)(B). "[A]ny failure to obey such order of the court may be punished by the

court as a contempt thereof." *Id*.

## IV.    ARGUMENT

44.    The at-issue subpoenas meet the well-established controlling legal standards

governing administrative subpoenas, and the Court should issue an order directing Respondents to

comply with the subpoenas.

### A.  The subpoenas meet the controlling legal standards.

45.    The Supreme Court has held that an administrative subpoena "is sufficient if the

inquiry is within the authority of the agency, the demand is not too indefinite, and the information

sought is reasonably relevant." *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950); *accord*

*McLane v. EEOC*, 581 U.S. 72, 77 (2017) (holding that if the information sought by an

administrative subpoena is relevant to the agency's inquiry, "the district court should enforce the

subpoena" unless the subpoena "is 'too indefinite,' has been issued for an 'illegitimate purpose,'

or is unduly burdensome"); (quoting *EEOC v. Shell Oil Co*., 466 U.S. 54, 72, n. 26 (1984)).

46.    The at-issue subpoenas meet this standard: (a) HSI's issuance of the subpoenas was

"within the authority of the agency"; (b) the demand in HSI's subpoenas was "not too indefinite";

and (c) the documents sought are "reasonably relevant" to HSI's investigations. *Morton Salt Co.*,

338 U.S. at 652; *see also* 8 U.S.C. § 1225(d)(4)(A) (granting HSI authority to issue subpoenas).

#### (1)  HSI had authority to issue the administrative subpoenas.

47.    The first element of the *Morton Salt* test is met because issuing the subpoenas was

"within the authority of the agency." *Morton Salt Co*., 338 U.S. at 652; *see also* 8 U.S.C. §

1225(d)(4)(A) (granting HSI authority to issue subpoenas).

**Page 15       Petition to Enforce Administrative Subpoenas**

48.     HSI's authority under 8 U.S.C. § 1225(d)(4)(A) is not limited to determining the admissibility of aliens entering the United States. Under this section, Congress empowered HSI officers to issue administrative subpoenas to seek documents that relate to whether an alien may reside in the United States, *or* to aid in the enforcement of the immigration laws as to aliens.

49.     The Supreme Court has recognized that the administrative subpoena authority of a federal agency is broad because the purpose of an administrative subpoena is not adjudicative but is instead a power "to inquire." *United States v. Clarke*, 573 U.S. 248, 254 (2014) (explaining that the purpose of an IRS summons "is 'not to accuse,' much less to adjudicate, but only 'to inquire'"); *United States v. Powell*, 379 U.S. 48, 57 (1964) (discussing other agencies' administrative subpoena powers as a "power of inquisition") (quoting *Morton Salt*, 338 U.S. at 642–43). Administrative agencies possess "powers of original inquiry" that allow them to "take steps to inform [themselves] as to whether there is probable violation of the law." *Id*.

50.     As relevant here, Congress permitted such subpoenas to be issued "relating to the privilege of any person to enter, reenter, reside in, or pass through the United States or concerning any matter which is material and relevant to the enforcement of this chapter and the administration of the service . . . ." 8 U.S.C. § 1225(d)(4)(A). The statute authorizes HSI to issue subpoenas on matters "encompass[ing] the full range of subjects covered by the [the Immigration and Nationality Act of 1952]." *United States v. Minker*, 350 U.S. 179, 185-86 (1956) (considering this provision as it appeared in a predecessor statute). Although, as originally drafted, the provision permitted subpoenas for "documents touching the right of any alien to enter, reenter, reside in, or pass through the United States," Congress later added language that "extended the subpoena power. . . ." *Id.* at 184. The "comprehensive addition of the clause 'or concerning any matter which is material and relevant to the enforcement of this Act and the administration of the Service',

Castelli Decl., Exhibit 2, Page 16 of 20
Case No: 6:24-cv-01464-MC

precludes [a] narrow[] reading" of HSI's subpoena authority. *Id.* at 185; s*ee also United States v. Van*, 931 F.2d 384, 387 (6th Cir. 1991) ("Although [this subpoena provision] appears in a part of the Immigration Act that describes the powers of INS agents on border patrol, the Supreme Court has held that the addition of the clause 'or concerning any matter which is material and relevant to the enforcement of the Act' encompasses the full range of subjects covered by the statute") (citing *Minker*, 350 U.S. at 184-85); *Sherman v. Hamilton*, 295 F.2d 516, 522 (1st Cir. 1961) (affirming district court's order enforcing subpoena under predecessor statute).

51.     Here, HSI is investigating 10 criminal aliens who are subject to removal based upon their criminal convictions. As part of its investigations, HSI seeks documents showing basic information relating to each criminal alien's identity, location, and recent criminal charge(s). These matters fall within the broad scope of inquiry authorized by Congress in 8 U.S.C. § 1225(d)(4)(A). HSI is authorized to investigate such matters. *Id.*

52.     Because HSI is authorized to investigate these criminal aliens, its subpoenas are authorized by 8 U.S.C. § 1225(d)(4)(A). *Cf. United States v. Ragauskas*, No. 94 C 2325, 1994 WL 445465, at *2 (N.D. Ill. Aug. 10, 1994) (enforcing an administrative subpoena under § 1225 in an investigation of a permanent resident alien suspected of collaborating with the Nazis, and concluding that "[c]learly, the investigation is authorized by Congress for a legitimate purpose"). Section 1225(d)(4)(A) does not require ICE to make any other showing. *Cf. Okla. Press Pub. Co. v. Walling*, 327 U.S. 186, 198-99, 208-09 (1946) (where a statute permitted the Department of Labor to "investigate such . . . matters as he may deem appropriate to determine whether any person has violated any provision of the Act," it was "not necessary . . . that a specific charge or complaint of violation of law be pending or that the order be made pursuant to one. It is enough

Castelli Decl., Exhibit 2, Page 17 of 20
Case No: 6:24-cv-01464-MC

that the investigation be for a lawfully authorized purpose, within the power of Congress to command.").

> **(2)    HSI's subpoenas for documents are not too indefinite.**

53.    The second element of the *Morton Salt* test is met because HSI's subpoenas seek very specific, limited documentation and thus are not "too indefinite." 338 U.S. at 652. The definiteness requirement ensures that the records sought can be identified by their description in the subpoena. *Cf. Okla. Press Pub. Co. v. Walling*, 327 U.S. 186, 208 (1946) (explaining that a subpoena may be improper if there is "too much indefiniteness or breadth" in the request); *cf. Perez v. Alegria*, No. 15-mc-401-SAC, 2015 WL 4744480, at *3 (D. Kan. Aug. 11, 2015) (explaining that an administrative subpoena is sufficiently definite when "[a]ll of the categories of information are sufficiently specific to enable" the respondent "to understand what information the [agency] seeks").

54.    Each subpoena here is sufficiently definite. Each request in the subpoenas is a clearly defined and narrow set of information to establish, for the criminal alien at issue, certain basic identification and address information and documents that show the criminal charge(s) relating to the criminal alien. *See generally supra* ¶¶ *17-25.*

55.    Indeed, Marion County had already conceded that the information sought is sufficiently definite and has already gathered the responsive records but has failed to produce them. *See Marion County v. Kotek, supra* at ¶ 19.

> **(3)    The information sought is reasonably relevant to the investigations.**

56.    Finally, the third element of the *Morton Salt* test is met because the documents sought are "reasonably relevant" to the ongoing investigations. 338 U.S. at 652.

57.     Courts have made clear that the scope of information that may be sought through an administrative subpoena is much broader than the subpoena authority available during a judicial process. In *Morton Salt*, a corporation challenged the authority of the Federal Trade Commission to issue administrative subpoenas because the agency allegedly was "engaged in a mere 'fishing expedition' to see if it can turn up evidence of guilt." *Id.* at 641. The Court cautioned that district courts should not "engraft judicial limitations upon the administrative process." *Id.* at 642; *see also id.* at 641 ("This case illustrates the difference between the judicial function and the [investigative] function the [agency] is attempting to perform."). Rather, administrative subpoenas can properly be based on "official curiosity" about whether a party has complied with the law. *See id.* at 652; *see also Phillips Petrol. v. Lujan*, 951 F.2d 257, 260 (10th Cir. 1991).

58.     Accordingly, where an agency has the authority to issue an administrative subpoena to investigate a matter, "relevance" is construed broadly. *See United States v. Arthur Young & Co.*, 465 U.S. 805, 813-14 (1984) ((holding that IRS subpoena was "not to be judged by the relevance standards used in deciding whether to admit evidence in federal court," and that the IRS "should not be required to establish that the documents it seeks are actually relevant in any technical, evidentiary sense." ("Records that illuminate any aspect of the return . . . are therefore highly relevant to legitimate IRS inquiry.")); *EEOC v. Dillon Cos., Inc.*, 310 F.3d 1271, 1274–75 (10th Cir. 2002) (observing that in the context of administrative subpoenas, the relevance requirement "'is not especially constraining'") (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68 (1984)).

59.     Here, HSI's subpoenas meet the requirements for "reasonable relevance" because the documents sought relate directly to HSI's investigation of the criminal aliens. HSI has reasonably determined that the subpoenaed information will aid HSI in identifying the criminal aliens, confirming their alienage, determining ways the criminal aliens could be contacted or

**Page 19        Petition to Enforce Administrative Subpoenas**

located, and ascertaining their recent criminal activity and history. Additionally, this information will aid in determining whether the criminal aliens are removable, potentially securing their apprehension, and evaluating their dangerousness to ensure the safety of the public and law enforcement officers who may seek to apprehend them. *See generally supra* at ¶¶ 17-25.

60.     In sum, the subpoenas meet all elements of the *Morton Salt* test. Accordingly, the Court should enforce the subpoenas. *Cf. Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943) (holding that a district court had a "duty" to order production of evidence sought by the Department of Labor through an administrative subpoena where "[t]he evidence sought was not plainly incompetent or irrelevant to any lawful purpose of the agency"); *see also EEOC v. Children's Hospital Medical Center*, 719 F.2d 1426, 1428 (9th Cir. 1983) (subpoena should be enforced if agency can show elements of *Morton Salt* test have been met).

## V.    RELIEF REQUESTED

The United States respectfully requests that the Court issue an order pursuant to 8 U.S.C. § 1225(d)(4)(b) requiring Respondents to comply with the administrative subpoenas at issue.

DATED this __30th__ day of September 2025.

SCOTT E. BRADFORD
United States Attorney
District of Oregon

*/s/Susanne Luse*
SUSANNE LUSE
Assistant United States Attorney
*Attorneys for the United States*

**Page 20       Petition to Enforce Administrative Subpoenas**